We'll now call the next case, the 11 o'clock case, Jeffs v. Ford Motor Company, 5-15-05-29. Counsel for the appellant, you may proceed. Thank you, Your Honor, and may it please the Court, Sean Murata for the Ford Motor Company. The trial court found personal jurisdiction over Ford for two reasons. First, that it was at home in Illinois, and second, that it had consented to jurisdiction by registering to do business with the Illinois Secretary of State, which Ford was required to do as a condition of doing business in the state of Illinois. And Plaintiff on Appeal has added two more reasons, that the trial court has specific jurisdiction over her claims, and finally, something that she calls, quote, jurisdiction by necessity. And I'll take them in that order. Turning first to the notion that Ford is, quote, at home in Illinois. That's a term of art, and it comes from the Supreme Court's two cases in Goodyear v. Brown and Daimler v. Bowman. And to be at home is to mean you'd be subject to general jurisdiction. That is, jurisdiction on all claims, regardless of their connection to the foreign state. So, regardless of whether the injury, where the injury occurs, where the conduct occurs, where the plaintiff is from, no matter what, under general jurisdiction, you'd be brought in the forum. And we know from Daimler, A.J. v. Bowman, that a corporation is generally subject to general jurisdiction, only where it is incorporated and where it has its principal place of business. And there is no dispute on this record that Ford is incorporated in Delaware and has its principal place of business in the state of Michigan. And what Daimler also teaches is that to be subject to general jurisdiction. Now, when you say principal place of business, doesn't that mean they have an office there? It means their headquarters. Their headquarters there. So, if they'd move their headquarters, then they'd move where they are, right? Right. But it's not just an office. It's the place where, as Daimler calls it, the decisions are made, where the executives are located, where the affairs of the corporation are conducted nationwide. So, it's not just a local office. Or worldwide. Right. In that particular case. So, to be at home outside of those two locations, you need to have, quote, an exceptional case. And we know what the exceptional case is from Daimler because it said that the exceptional case was a case called Perkins. And in Perkins, it was truly an exceptional case. What you had was a Philippine mining corporation that was, during World War II, relocated its principal place of business, the place where the decisions were made, to the state of Ohio. So, it's from the Philippines and is now in Ohio. And under those unusual circumstances, there could be general jurisdiction in Ohio because it was essentially a temporary headquarters during World War II. But no one suggested that Ford's executives have moved world headquarters from Dearborn to Illinois. And for that reason, Ford cannot be subject to general jurisdiction in Illinois. You're not positing to this Court that Perkins is the only type of general jurisdiction that can be found, are you? Because Daimler doesn't say that. Daimler doesn't say it's the only one, but it says it's the textbook. So, when you think of the textbook, it has to be something like Perkins. And I think the way you would think of Perkins as a kind of case where the quality of operations in the state are similar to having a principal place of business or a corporation. And when we talk about principal place of business, it's about high-level executive decisions. And again, there's been no claim that Ford's high-level executive decisions are being done out of the state of Illinois. Well, Daimler also talks about the activity, the length of activity, the transactional aspects of a corporation's – excuse me, I'm finding something and I'm losing, I think – the type of activities in the state, and that can become general jurisdiction. Well, what Daimler says down in footnote 20 is that you don't just focus on the quantity of activity. So, you can't just say it because Ford doesn't want to. Right. You have to look at the total nature of it. Quantity is one aspect. That's absolutely right. Exactly. So, Perkins is not a limitation. It's a prime example. Whether you call it the textbook, whether you call it limitation, I think it has to be something in the ballpark of Perkins. And certainly what Ford has here is not in the ballpark of Perkins. Because what Plaintiff has suggested makes Ford unusual in this state is that it has manufacturing facilities here. But as Plaintiff admits also in her brief, Ford has manufacturing facilities in 500 states. So, that would postulate that Ford is at home in six different states, over 10% of the United States. And again, what we know from Daimler is that a corporation that does business in many places can't be at home in all of them. And even if you just look at the quantity, you know, it's 7.5% of employees, 5% of independent dealerships, and 4.5% of total sales. And that's at page 8 of our report. How many states does Ford have a town named after? I don't know how many states Ford has a town named after. But I'll say it's legally irrelevant, Your Honor, because we know from Walden v. Fjord that it has to be the connections that Ford creates. So, the fact that a town in Illinois has chose to do the honor of Ford of naming itself after them doesn't have any connection to what Ford has done. You don't think that they did it just as a serendipity check. It's only a few letters. So, it would be easy to remember. I mean, it's been – Ford has been in Illinois since 1920. The trial court indicated 1922, so they actually gave you a couple years. But it's been in since 1920, and no one in this courtroom was alive in 1920. So, you're saying that the only type of at-home finding that can be sustained is one that looks like Perkins? I think something similar to Perkins, and to get to the 1920s point, I think you can tell a story about Ford's operations in a lot of places in the same way. And when you look at the cases we cite in our brief where courts have not found Ford subject to general jurisdiction in the state. So, take McGill v. Ford in the Colorado Supreme Court where the plaintiff came in and said, you know, you have a training and operations center here. You train your mechanics at our state. No general jurisdiction. The Sullivan decision out of the Northern District of California, they said you have a key research and innovation center here. The future of Ford is happening in California. Well, Daimler basically indicates you have to look at the situation. It's not – a company like Ford is not going to be at home in all 50 states. But one cannot categorically determine that Ford is not at home in only two states where their headquarters are and where it's incorporated. And as you just stated to this court, it could reasonably be found to have general jurisdiction in six out of the 50. I'm partly looking at the specifics of this particular case in the light of the way Daimler has configured Goodyear and explained it and setting aside the transnational aspects – excuse me – of Daimler. You certainly have to look at it on a case-by-case basis. But what Daimler has emphasized is that – I mean, take Daimler itself, quite frankly. It sold 2.3 percent of all of its products in the state of California. And that was global, by the way. And did billions, it could be, of dollars' worth of business in the state of California. It had a regional headquarters there. It had a classic car center there. It had a vehicle preparation center in California. Those are all the same sort of things that Plaintiff is pointing to in Ford here. But yet there was no general jurisdiction over Daimler. Was that based on the quantity and quality of the activity or the fact that Mercedes-Benz USA was the one sued, and it was a question of either agency or some sort of arrangement between parent and subsidiary? So the court in that case said, we're not going to think about the parent-subsidiary issue, although that was one of the issues raised, because they said, even assuming you compute Mercedes-Benz's contracts up to Daimler and say essentially it's all just Daimler, they said there's still not general jurisdiction on those facts. And I would point the court to Justice Sotomayor's concurrence in Daimler, where she made many of the arguments that Plaintiffs do today, that it's unfair that a big corporation like Daimler or like Ford that does business in a whole lot of states, even substantial business, isn't going to be subject to general jurisdiction. And the majority wasn't persuaded by that, because general jurisdiction, which is a secondary form of jurisdiction in the current era, should be easily ascertainable. You shouldn't have to do a deep dive in every case and say all the way back to 1920, what is Ford's connection to the given state? It should be fairly easily ascertainable. And the way you make it easily ascertainable is that it's a principal place of business, it's a state of incorporation, unless there's something truly exceptional. And there's nothing truly exceptional on those facts. The – excuse me – in Justice Sotomayor's concurring opinion, she indicates that Daimler basically concedes general jurisdiction over MBUSA based on sales, facilities, regional headquarters, et cetera. The question is attribution to Daimler. Isn't that an accurate characterization of her concurring opinion? That's what her concurring opinion says. And Justice Sotomayor seemed concerned that the majority was answering the question that the case didn't pose. But the majority responds to that and says, actually, the question of general jurisdiction is fairly presented in this case, and that we're just going to assume the agency question, assume that all those contacts we're talking about are imputed up. And, yes, they admitted that Daimler hadn't contested Mercedes-Benz's general jurisdiction in California. Right. So it just wasn't contested. Right. And here we don't have a transnational aspect. We don't have a parent subsidiary question. We've got a focused question of general jurisdiction, the concept of whether Ford, in this particular state, is at home under the precepts of Goodyear and Daimler. I would agree that we don't have a parent subsidiary relationship, except to the extent that plaintiff tries to pull in Ford Motor Credit Company, which is a subsidiary. But, you know, I would point Your Honor to all the decisions across the country, Colorado, California, Mississippi, all the places that Ford has not been found at home. And in each one of those cases, plaintiffs have come forward and said, there's something unique about Ford's operations in this state. But set it apart from everywhere else, because everyone will say, you know, don't worry about the rest of the states. Think about just Ford here. But yet in each of those cases, general jurisdiction has been rejected. And we'd ask the court to reject it here as well. If I could, I'd like to turn to the consent by registration issue, which was another issue that the trial court relied upon. And that is the notion that Ford has somehow consented to general jurisdiction in Illinois because it registered to do business back in 1920. And our arguments are threefold. First, nothing in the Illinois long-term statute or in the Corporation Act says that by registering to do business in the state of Illinois, you consent to anything, you accept the service of process. It says nothing about personal jurisdiction, and it says nothing about general jurisdiction. So our position is that you should not read into the statute words that simply are not there, particularly given the significant constitutional concerns that would arise if you did. Plaintiff purports to find the consent to registration, at least as a statutory matter, under the reference to the duties of the corporation that registers. But under the modern cases, there's no sense that consent to general jurisdiction is a duty of the corporation. It's just a consequence of being at home here and reading the process books. But even if you read the statute in that way, it would be inconsistent with due process because we know from Daimler that the test for general jurisdiction is not merely doing business, but that is the test to register to do business, to register in Illinois. So under Plaintiff's view, you would bring in through the back door the old repudiated test from pre-Daimler, which is doing business, would be the standard for general jurisdiction once more, as long as you complied with the formalities necessary to conduct business in the state of Illinois. Plaintiff cites some older cases, principally a case called Pennsylvania Fire. But Pennsylvania Fire has been overturned, or at least that category of cases has been overturned three times by the Supreme Court. It's been overturned in Schaefer v. Heitner when in footnote 39 the court said, to the extent that cases for international shoe are inconsistent with it, we overturned them. They were out of the game. It was overturned again in Vernon v. Superior Court when the plurality of the court said that the eviction of implied consent was done away with in international shoe. And it was overturned a third time in Daimler when it cited cases, not Pennsylvania Fire, but similar cases, and said that those cases should not attract heavy reliance today. Three times the Supreme Court said don't rely on pre-international shoe cases as the measure of general jurisdiction. But yet that's what Plaintiff is asking this court to do today, and it should decline to do so. Finally, even if you thought it was consistent with due process because there was some sort of consent in the air, it would still be unduly coercive to force court to give up its right to contest general jurisdiction as simply the cost of having the privilege of doing business in the state of Illinois. From the Bendix-Faudelite case, which we cite in our brief, it's simply too great a burden to say that if you want to resist general jurisdiction over you, you can't have a factory, you can't hire people in Illinois, and you can't do any of the things that businesses do when they cross state lines and engage in their state commerce. I mean, if anything, the burden is even stronger than in Bendix, because in Bendix it was you had to give up the statute of limitations. Here you have to surrender your entire privilege of doing business in the state and all the benefits that it brings both for the court and for the people of the state of Illinois quite frankly. And that ties back to our final argument on consent by registration, which is constitutional avoidance, that given these very serious constitutional problems that all the cases to address it have noted, including the Seventh Circuit Wilson case, this court should simply not interpret the registration statute in such a way as to impose consent by registration as a consequence for doing business in the state, because this court is required to interpret statutes in such a way that they're constitutional, and there's an easy way to do that. Just say that what the registration statute means is you can serve Ford's registered agent with process, and that simplifies the process of bringing Ford into a suit, but it doesn't determine the general jurisdiction question. Turning then to specific jurisdiction, we know from the cases that the plaintiff's claims must, quote, arise out of or relate to Ford's contacts in Illinois. And we know from Russell, from all the cases it cites, that that is generally a but-for test. In other words, you imagine a world in which Ford has no contacts, where it doesn't have a factory, it hasn't sold a single car, doesn't employ a single employee, and say, will plaintiff's claims be exactly the same? And the answer is yes. We know in this case that plaintiff's claims would be exactly the same, at least as asserted against Ford, even if Ford did nothing to him. And that test also comes from this Court's cases in Spartan Motors v. New Power and Keller v. Henderson, that the action must arise directly out of contacts between the defendant. Before I close, let me double back to general jurisdiction and answer one question, which is there's a case from the First District called Aspen Warehouse, and I point out that the Illinois Supreme Court just granted a petition for me to appeal on that case. Could you repeat that name, Mark? Sure. It's called Aspen Warehouse, I think it's called. It's from the First District. It's cited in both sides' briefs. Right. And the Illinois Supreme Court just granted a petition for me to appeal on that case. So I would suggest, Your Honor, if you wanted more guidance on the Goodyear-Daimler standard and how it applies in Illinois, and if that's perhaps where the decision is going, the Court might benefit from that decision when it comes down from the Illinois Supreme Court. Unless the Court has further questions. Has that been argued yet? I don't believe so. I think the grant is fairly recent, so it's probably still in the briefing stage. But I think that's going to give a little more flesh on the bones to the extent the Court wants it, though we think under the existing case law, Ford is simply not involved. Thank you. Thank you, Counsel. We'll have an opportunity for another. Counsel for the appeal. Good evening, Your Honors. Jonathan Rock, Michelle and Margaret Smiley on behalf of Mrs. Jeffs. May it please the Court. Counsel. I'd like to thank the Court for granting me the permission for this case. You'll have to speak up for a recording. I apologize. Ninety-six years ago, Ford made a decision. They made a choice to come to the State of Illinois and set up shop here as a corporate resident of the State of Illinois. At the time that they did so, 38 years before, the Supreme Court of Illinois in a case called Hannibal and St. Joseph Railroad, a case ignored by Ford in its briefing, in its reply brief, and in oral argument today, interpreted the same language that exists today with respect to the corporation's general registration statute and determined that that statute says what it says, means what it says, and means that companies that come to the State of Illinois and have an agent for service of process for a corporation are subject to general jurisdiction in the State of Illinois. This was in 1882. Ford has never mentioned that in its briefing and did not mention it today. When Ford chose to come to the State of Illinois in 1920. So are you suggesting that Daimler has no impact on that case? That is exactly what I'm suggesting, and it's exactly what Daimler says. And the suggestion that Daimler or any other case by the United States Supreme Court has overruled pre-international SHU case law with respect to general jurisdiction and the traditional means of getting general jurisdiction is belied by the specific language of Justice Ginsburg on page 757 and carrying over to 758 in the Supreme Court version, Supreme Court reported version of the Daimler decision where Justice Ginsburg says under the majority that international SHU threw off the territorial limitations of the Penoyer v. Neff case with respect to specific jurisdiction but that no case from international SHU before it has ever expanded or changed the means for obtaining general jurisdiction over a corporation. Justice Ginsburg specifically states, right, specific jurisdiction has been cut loose from Penoyer's sway, but we have declined to stretch general jurisdiction beyond limits traditionally recognized. The limits traditionally recognized have included registration and consent. Ford's argument, Ford's sky is falling argument, if you hold Ford subject to general jurisdiction here because they merely registered, then they're going to be subject to general jurisdiction everywhere because they've registered in all 50 states. It's both factually and legally untrue. Well, let me ask you something. You've got a situation of considering general jurisdiction as an at-home analysis. You've also got specific statutes concerning registration in a given state. Are you saying, you know, at-home is here, but looking at the specific wording of a specific registration statute, one can consent, and it depends on the wording of the particular statute in a particular state. So we're differentiating the two arguments. Is that basically your position? Yes, Your Honor. That accurately states our position that the concept of consensual registration is dependent upon each state's construction of its registration statute and each state's judicial construction of its registration statute. So, for example, we cited in our brief Arkansas and Mississippi as states that have expressly stated in their registration statute that registering pursuant to the registration statute does not confer a basis for jurisdiction. So the legislature can add that to the general registration statute any time it wants. There are at least 11 states that have enacted similar provisions, Maryland, the District of Columbia, Oregon, Washington State, get a few more, but I'll mess them up. But I found at least 11. There are additionally, as Ford points out, at least two states that have construed their registration statute as not conferring consent, Colorado and Delaware. So to suggest that if this Court were to make a ruling holding Ford subject to general jurisdiction through registration and consent, as has been the law in the state of Illinois since 1882, what they're asking this Court to do is ignore the fact that many states have the opposite statutory scheme or have judicially construed it in the opposite way. And they're ignoring the fact that at any time it wants, the legislature in Springfield can change the law, right? What they're asking Your Honors to do is to act as the legislature and to change 140 years of established Illinois law and say that the statute no longer needs what it meant when Ford came and registered to do business in the state of Illinois in 1920. And that's something that I'd like to get to now. I was going to address it later, but Ford suggests in its brief that the plaintiffs haven't cited any case since the 1983 enactment of the Business Corporations Act, and that's true. But the language in the 1983 act, the operative language, is the same as from the Hanover case. And that provision of the act has been amended repeatedly. Now, I can cite for you at least four of it. There was 1870, 1872, 1919, 1983. And if you look at the operative language in each of those statutes, this provision, which is now Section 1310, says that the corporations will be held to the same rights, duties, responsibilities, privileges, and they'll have the same rights but no greater than an Illinois-registered corporation. And this takes us back to 1882 and the Hanover case, where in Hanover you have a railroad that comes over the river from Missouri into Illinois. They've got an agent in Illinois that's sort of in the process, and what they're trying to do is garnish the railroad for a debt arising from a judgment that was entered in Missouri on actions entirely in Missouri. And the defense of the garnishing of the railroad is this all happened in Missouri, and you can't garnish us in Illinois for this. And the Supreme Court of Illinois looks at the general registration statute, and it says you're going to be held to the same rights, responsibilities, privileges, all the things that we've gone through, and it's set forth in the briefing. And the court says it's beyond dispute, it's beyond dispute, that the railroad would be subject to a judgment on the merits on this matter, irrespective of the fact that all the events occurred in Missouri. It's irrelevant, and therefore they're also subject to garnishment on the judgment that arose from it. So the court there construed the exact same language, and they construed it in the basic argument for the railroad that Ford is making today. Sort of everything old is new again. The argument that was made by the railroad is, well, the insurance company registration statute expressly uses the word consent as one of the things that's going to happen if you register to do business. And because they expressly use the word consent in the insurance registration statute, and they just say you're going to be treated exactly the same as an Illinois corporation from the general registration statute, that must mean it doesn't include consent. And the Supreme Court of Illinois easily dismisses of this. They say, well, it's nice that the legislature did that to put it beyond dispute with respect to the Illinois insurance company statute, but we don't even have to broadly construe the general court registration statute to determine that when it says you're going to be held to the same duties and responsibilities, you are indisputably subject to a judgment even though it's on a transient action, even though it's a general jurisdiction situation. And it is telling that Ford has never addressed the Hannibal case in this court. And so we have that section of registration and consent. With respect to this court's decision, Hannibal remains good law. The claim by Ford that will plaintiff is citing these dusty cases, that's nice. Hannibal is not as old as the Constitution. It's still viable law. It's not as old as the 14th Amendment. That's still viable law. And Hannibal has not been overturned. The concept of consent through registration is viable today in Illinois. It's not viable in certain other states because the statutes are written differently. But that's a decision for the folks in Springfield, not a decision for today. Now, with respect to specific jurisdiction, the fundamental flaw of Ford's position with respect to specific jurisdiction is its inability to substantively address the facts and the findings in the Russell case. And what we heard today in the law argument is pretty much the same as what Ford has said in its briefing. Well, Russell is the case, but Russell doesn't really mean what it says. You've got to look at the cases that Russell cites. And the cases that Russell cites use terms like but-for causation or arise directly out of when talking about the related to prong for specific jurisdiction. And the problem that Ford has that's insurmountable in this case is the holding of Russell is flatly inconsistent with that reading of the case because the acts that tied the defendant to the state of Illinois in Russell were the sale of bearings, metal bearings, that were included in motors that activated the flaps on aircraft. So they put the flaps down when you're landing. It's the motor that moves the flap. So those aircraft bearings, airplane bearings, were sold to a company that had a factory in San Diego but that processed the invoices in Illinois, in Chicago. So they're airplane bearings that extend the flaps of airplanes. The helicopter crashed because of defective bearings in the tail rotor of a helicopter. These are different bearings sold for a different type of aircraft that were sold in Europe and Louisiana. There is no causal connection between these two lines of activity, right? And that's exactly the argument of the defendant in that case. They say the only similarity between these two things is they're round and they're for things that fly, right? They're bearings for aircraft. But they're completely different products, right? One is going into airplanes and going into a little motor that extends the flaps, and the other one keeps the tail rotor spinning on the helicopter. There's no direct causal connection between those two actions. There is no arising directly out of connection in Russell for what happened, the helicopter crash, and the actions that were sufficient to tie the defendant to Illinois in the eyes of the Supreme Court of Illinois. And the court says the defendant's attempt to distinguish between the different types of products in its overall general business is insufficient, right? The general business of this company was selling round things for things that fly. That's what caused the problem. It did it in Illinois. It's related to enough for what the court says is the flexible and lenient related-to standard. While it's true that the court cites in part of its discussion cases that use different tests, cases that use a but-for test, a direct causation test, and a rise-directly-out test, the court in Russell does not apply that test. Ford has no answer for that. It has not addressed the substance of the facts in Russell. Instead, it says, Russell, in the cases it cites, stands for the proposition that it has to arise directly out. But that's not what Russell does. And when you read the Russell opinion, you'll see there is no connection. These are parallel lines of activity that are similar, and that's enough for related-to. And this is one of the rare instances, the rare instances in the law, where we have the Supreme Court of the United States expressly declining to define a term, the Helicopteros case. The United States Supreme Court says it has to arise out of or relate to the actions in the foreign state. And that's it. But we're not going to tell you what that means. Well, the Supreme Court of Illinois has. It's a flexible and lenient standard applied in Russell where anything falling within the general category of the general business, the general business selling ground bearings for things that fly, is enough for related-to jurisdiction. Here, we have a much tighter tie to the facts of this case. There is no dispute in this case that Mr. Jeffs was exposed to, for purposes of today, I'm sure at trial there will be a dispute, but for purposes of today, there is no dispute that Mr. Jeffs was exposed to asbestos from asbestos-containing pipe insulation at a power plant in Michigan that was owned by Ford to power its factories. There is also no dispute in this case, for purposes of today, that Illinois workers at Ford's Illinois plants have been exposed to Illinois asbestos from pipe covering in the power plants and factories that Ford runs in Illinois, where thousands of Illinois citizens work every day. And we've submitted in the record, it's at 895 to 900 in the record, the Illinois Department of Environment records, where Ford says, we're going to go in and we're going to abate it. We're going to take out asbestos pipe covering. And in 1992, spinning over to 1993, this is record 895 to 898, they take out three miles, over 17,000 linear feet, of asbestos-containing pipe covering. There's also no dispute that workers in those factories have gotten mesothelioma, the same disease Mr. Jeffs got from being exposed in Ford's power plant in Michigan. And we know that because Ford kept a unified death list of individuals that got mesothelioma from working in their plants, employees of Ford. And on that list are workers from the plants in Michigan, like the plant Mr. Jeffs worked in, and workers from the Illinois plants. So we have the same exact hazard. We have the same exact consequence. We have citizens of the state of Illinois being exposed to the same danger that Mr. Jeffs was exposed to. The only distinction is the exposure didn't occur in the state. And neither Russell nor any other decision cited by Ford stands for a proposition that the exposure has to occur in the state to this particular individual for the case to be related to under the rules of Russell Court in 2013. And Russell is also one of these interesting cases where not only has the Illinois Supreme Court expressly done what the United States Supreme Court has expressly refused to do, but it was one of the rare cases where a denial of certiorari by the United States Supreme Court really has an interesting weight to it. Because Jeffs, I'm sorry, the Russell case was on petition for certiorari in the term of 2013. And the court on October 7, 2013, denies cert in Russell. The next week, they have oral argument in the Dimond case. And the next month, they have oral argument in the Walden case, another case that Ford cites as supporting their position. Walden, of course, is dealing with specific jurisdiction. Dimond is the case that Ford contends wildly revamped general jurisdictional jurisprudence. So at a time when the court is fully briefed on both general and specific jurisdictional issues, the Russell case comes up for potential review and the court takes a pass. Russell is binding today. The facts and the holding in Russell are completely irreconcilable with Ford's arising directly out of plaintiff-specific related to test. And that's important because in specific jurisdiction, there are three things that we have to deal with. There's purposeful availment. Then there's related to or arises out of. Russell deals with that. And the last thing is the reasonableness factors that the Supreme Court has articulated. And these are not exclusive, but they've consistently stated the following. The plaintiff's interest in resolution of the case. The burden on the defendant from litigating in the forum state. The interest of the state, the forum state, in resolving the conflict. And the interest of the interstate justice system with respect to whether the case stays in Illinois or not. Mrs. Jeffs, as we pointed out in her brief, has no way to reasonably pursue the rights of her and her husband if she cannot bring a case in a forum where she can bring as many of the potential court feasors into the court as possible. That's both fair for her because she can obtain complete relief. It's also fair for the defendants because here under Illinois law, the defendant, if they go to verdict, gets an automatic dollar-for-dollar set-off against any verdict for any settlements that have been reached and determined to be good faith settlements by the trial court. All the settlements in this case were determined to be good faith settlements. So if Ford goes to verdict in this case, then he would get automatic dollar-for-dollar set-off against the verdict for every settlement, every penny that's been received in settlement. So Mrs. Jeffs has to have a place where she can bring them all in. Otherwise, she's going to have to run around and file at least nine suits. The court is right. There's no burden on the court in defending this case here as anywhere else. They have an established business presence here. They have sophisticated asbestos counsel here in the state of Illinois. They have litigated many cases in Illinois. And they have not seriously contested that there's any burden on them litigating this case in Illinois versus any other court. The interest of the state of Illinois is clear. 5,000 Illinois workers a day go into Ford factories, and for decades were exposed to massive amounts of asbestos, just like Mrs. Jeffs was. And the policies that were controlling those exposures, for example, post-1972, OSHA controlled Ford's behavior both in Michigan and here. The policies are the same, and the danger to Illinois citizens are the same. So Illinois has an interest in resolving this claim. And Mr. Jeffs was also exposed to asbestos in Illinois. Four of the companies that were defendants of Illinois companies, 27 of 38, have registered to do business in Illinois. And three of the companies that are not Illinois-registered were sued for exposures in Illinois. So we have a lot of connections to Illinois. We have the disease being caused by the accumulated effect. And this takes us to really the most interesting part of the reason on this analysis, which is the interest of the interstate justice system. No case decided by the Supreme Court has addressed an asbestos case where you have exposure to multiple jurisdictions and one individual injury. Thank you, Counsel. Rebuttal. Thank you, Your Honor. First, let me just clarify the case name that I gave at the very end. It's Aspen American Insurance Company v. Interstate Warehousing. Aspen American. Yeah, there's Aspen and there's warehouses, but not quite in that order. Second, my friend on the other side has suggested that Daimler does not change the consent-by-registration analysis. But I point the court to footnote 18 of Daimler, which says, and it cites a case called Barrow Steamship Corporation, which is a consent-by-registration case. There were many in that era. And it said that case, quote, should not attract heavy reliance today. That is overturning that era. And there's no mention of Schaefer v. Heitner and no mention of Vernon v. Superior Court, the other two cases that also did away with that era. Third, my friend on the other side mentions the Hannibal case from the Illinois Supreme Court. That case is from 1882, which is that very era that was dominated by the territorial thinking of Penoyer v. Neff. So it's not at all surprising that the Illinois Supreme Court during that time, influenced by that thinking, reached the results it did. And I would point the court to the Genuine Auto Parts case v. Penick decision that's from the Delaware Supreme Court, where it revisited its old case law regarding consent-by-registration. Again, under the statute, not constitutionally, but under the statute. And said, given the sea change that we have seen from those cases I've been discussing, we cannot hold to that same view. And of course, this court does not have to follow precedent that has been overturned by intervening case law. And then I think we come to the specific jurisdiction issue under Russell. And the key, I think, distinguishing point that my friend on the other side did not dwell on is that the helicopter crash occurred in Illinois. So the Illinois Supreme Court in that case was focused on the times that are sufficient when you have an occurrence, the crash, that occurred in Illinois. And certainly, Russell cannot overturn Goodyear's statement where it says, before it discusses general jurisdiction, there was not specific jurisdiction in that product defect suit because the plaintiff wasn't injured in North Carolina where the case came out of. The good wasn't manufactured there, and the good wasn't sold there. So certainly, at the very least, what we know from Russell and Goodyear together is there could perhaps be specific jurisdiction where the injury occurs in the form. But here, plaintiff does not deny that there is no Ford-related injury that occurred in the state of Illinois. To the extent it occurred, it occurred in Michigan, where he was exposed to asbestos at a Ford factory, at least allegedly. So that's how you work away Russell, and I think that's the key point. And Russell, remember, addresses relatedness only in two paragraphs. The case is primarily about the stream of commerce thing that we all learned in law school. And, you know, is it stream of commerce plus or stream of commerce minus or what? But on the relatedness issue, the key point was that there was, as my friend on the other side mentioned, the bearings and the crash in Illinois. And that's what sets that case apart. Finally, there was some talk about fairness and simply what is fair in this case. One allegation about fairness has been that, well, we want to get all the defendants in one place. But the U.S. Supreme Court held in Rush v. Savchuk that there has to be personal jurisdiction over each defendant. Second, the U.S. Supreme Court held in Walden v. Feuer that personal jurisdiction isn't about fairness to the plaintiff. It's about fairness to the defendant. It's not about convenience for the parties. And finally, the court held in Hanselman v. Decla that regardless of how convenient it is, you cannot bring an out-of-state defendant in-state to defend if there isn't the required minimum context under personal jurisdiction. Fairness simply isn't part of it, at least not in the answer, unless the court has further questions. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course. The court will stand in recess.